Your Honor, the third case on the docket this morning is 2-43-0083, Savis, Inc. v. Flora Corporation, Kirkland-Texas-Mall County, Inc., and Illinois, Inc., and State-Kilmer-Colonia, Inc., and Honore, Inc., plaintiffs, felons, and cross-athletes, v. Antoine Khoury, John Khoury, Project Pharma, LLC, and Project Pharma, Inc., defendants, athletes, and cross-athletes. Arguing on behalf of the athlete and cross-athlete is Mr. Joel Robb. Arguing on behalf of the athlete and cross-athlete is Mr. Douglas Alberton. Thank you. Is it Robb or Rabb? Robb, Your Honor. You may proceed, sir. Thank you. Esteemed Justices, good morning. My name is Joel Robb, and I am the attorney for the plaintiffs and the appellants in this matter. I'll begin under the presumption that the Court is familiar with the issues that are being presented for review. The first and foremost issue before this Court is whether the trial court abused its discretion in denying Savas' February 2022 motion for leave to file a second amended complaint. Generally speaking, any doubt as to whether or not a plaintiff should be granted leave to file an amended complaint should be decided in favor of the allowance of that amendment. In applying the literal factors to the issue regarding the February 22 motion for leave, the proposed amendment was designed to cure an effective plea Savas had sought to reassert the claim in February of 22 after attaining additional facts. What additional facts were those? Your Honor, the additional facts that were found were the fact that Gary Parra, who was a high-level executive with Avexis, had been communicating with Tony Khoury while Tony was still exclusively supposed to be with Savas. It is in the record that on the very same day that Avexis informed Savas that it was terminating its relationship, there was a text message from Gary to Tony Khoury. But it was already known that they were communicating, wasn't it? It was already known. To the extent to which they were communicating, not as much. After the close of discovery and the oral discovery, there was a much greater factual basis to continue on that line, and without jumping ahead even more so, Your Honor, after trial. In your briefs, you argue that the failure to attach a proposed complaint to your motion to conform to the proofs is not fatal to our review. But how can you say that when we don't have a proposed complaint in front of us? I apologize. Are we supposed to draw the facts that would have been pledged in the record? No, Your Honor. It's twofold. Number one, 616 does not enumerate that that amended, proposed amended leaving has to be attached. But in this instance, because there were several possible additional claims that we were looking to include, rather than put together a proposed amended complaint that may have included things that the court may not have agreed to, what we did was plead within the motion to amend, to conform, with great specificity, outlining the causes of actions that we intended to bring and the elements on how they were met. Adding new defendants as well. What's that? Adding new defendants as well. Indeed, Your Honor. But not defendants that hadn't already at one point been included. I think the – I understand the trial court's reasoning, even if I disagree with it, but I think the most disparaging difference is really on that breach of judiciary duty. The operative facts that were – Which the trial court rejected in 2019. Which trial court? Well, there was a finding when the first complaint was dismissed that there was no fiduciary duty alleged, correct? Yes, there was no fiduciary duty alleged. And the court just made a repetition that with respect to the jurisdictional argument that the defendants make, the court made reference to that in its judgment. You're talking about in its final judgment. Right. I mean, the operative facts in the 2018 complaint – I apologize, I keep ticking underneath here – the operative facts in the May 2018 complaint, even with a fiduciary duty claim, were the same operative facts that were proven up at trial. There was no surprise in that we did not intend to move forward on the breach of fiduciary duty. In fact, proof positive is defense counsel's own words regarding a release valve. When the February 22 motion for leave to amend was denied, we were once again trying to reassert the breach of fiduciary duty, and the claim was, well, there's not enough facts and evidence right now to support that, but there is the release valve of conforming after the close of evidence to conform. So from that standpoint – And what new evidence was there that either of the Corey brothers owed a fiduciary duty? In terms of new evidence, the reason they owed a fiduciary duty is because, on one hand, you've got the principal being able to conduct the activities of the agents, both Tony and John Corey, but on the other hand, the agents also owe the principal an exclusive duty under the confines of that relationship. And why? Because we were able to determine at court through what was proven up was, number one, that in John's case, John Corey's case, not only did he have complete access to the bank accounts and was in control of the bookkeeping, but also had complete supervision of the entire electronic database owned by Savitz. Tony Corey was the one who put forth proposals to companies like Amgen and Avexis, and in doing so, if those proposals were accepted, it would legally bind Savitz. So in that context, we were able to demonstrate at trial the agency obligations that the two Corey brothers had. What agency relationship? They were independent contractors, and that's what they were hired to do. I understand, but the case law that we've cited, Your Honor, is very explicit in that independent contractors can be agents. And that's no different here. Even the issue of the court's finding, we look to the court's finding and the record and decide whether or not the court's finding that there was no fiduciary duty proven is, I guess, a manifest way to the evidence, correct? I think that the court's ruling was that the reason there was no breach of fiduciary duty was because of this contractor relationship. And I think the trial court erred in that respect. I think the case law that we've cited with regard to that, frankly, Your Honor, I apologize for my notes, but both in Radiac and Mulaney, I think that was established. In this instance, both Corey brothers had the ability to bind Savitz legally, and they, according to their testimony at trial, were working exclusively on behalf of Savitz. Their respective LLCs, they were the only member, they were the only employee, and their only role within the confines of that company was to act on behalf of Savitz. So the proposition that since they were contractors and not employees and therefore couldn't be fiduciaries, with all due respect, is wrong. And I think the case law asserts that. Now, beyond that, Your Honor, the court didn't really take any deep analysis or provide any deep analysis with regard to the actual actions. The court found that Tony Corey was working for Project Primal while still with Savitz. Number one, we've got e-mails that Tony Corey at Project Primal was still working, and obviously, if you've read the record, the whole proposition of Justin Powers was an absolute farce. The proposals put forth under Justin Powers' e-mail for months prior to Tony leaving Savitz were the exact style and proposals that Tony was putting forth with his work at Savitz. From that standpoint, their testimony that they had exclusive and sole responsibility to Savitz and weren't providing any advisory work to other companies, I think the issue of being an agent and establishing that fiduciary relationship is there. But if the court's only rationale was that they couldn't be fiduciaries, they couldn't be agents because they were independent contractors, I think that's incorrect. Let's go back to the denial of the lead to file a demanding complaint and the Loyola factors. You're not disputing that the plaintiffs were not responsible for discovery delays in the case, are you? I think the discovery delays, as far as I've reviewed them, are there. But the courts are both parties, right? To a degree, yes. I have to concede that. I mean, but we're dealing with a complex issue of hundreds of thousands of documents within a drive to assert a unified process of theory. But in the end, in January of 21, when we first noticed our depositions, there was immediately a stay, a motion by the defendant to stay. And then there's five motions for summary judgment filed before a single deposition is even conducted. They created a situation where by the time the depositions were finished, with some minor extensions, that discovery was closed. From that standpoint, Your Honor, I think the onus of the delay lies with the defendant. But nonetheless, whether the amended complaint could have been brought two months before, really shouldn't be an issue because the underlying facts, which needed to be proven up in the trade secret and the civil conspiracy counts, were no different than the facts alleged and finally proven in trial with regards to the breach of fiduciary duty. Bill? Counsel, insofar as a fiduciary relationship, like almost all the other torts, you have to establish or allege damage is proximately caused. And in your explanation to Justice Burkett's inquiries, you didn't mention what the damages were or how they were proximately caused by whatever communications were going on that were relatively new or weren't. So could you tell me what you would have put in the complaint had you filed one? Were the damages that were proximately caused? I would point out the specific clients of Savas that left to go to Project Pharma and through the profit and loss statements provided by the defendants in discovery and also the accounting records of Savas as identified by their accountant, that the first example is in the first year after Avexis left Savas. Savas lost $7.8 million of revenue from Avexis, which was typical of a yearly billing. That same year, Project Pharma had $7.8 million of revenue from Avexis. So when it comes down to alleging damages, reasonable inferences based on revenue numbers is enough to surpass them being merely speculative. Well, would you agree that you've described a correlation rather than a proof? No, Your Honor, I think that a reasonable inference can be drawn. The case law we cited suggests that reasonable inferences can be made because the idea of proving damages with absolute mathematical precision is oftentimes not available but also cost prohibitive. It would be a different story if the revenue from Project Pharma was being derived from companies that had not previously worked with Savas. There was no—I didn't mean to interrupt you. It's okay, Your Honor. There was no covenant not to compete or there was no restriction. Even without a restrictive covenant, the fact that they were agents  Well, the trial court found that there was no fiduciary relationship and they were not agents. They were independent contractors. Sure, but— And I know on the surface it looks like these are bad guys, but proof and suspicions are two different things, correct? Tony's own admission during trial was that he worked exclusively for Savas, solely for Savas, and was not working on behalf of anybody else or was not supposed to. But we now know that he was, and even the trial court was able to reason that Tony Corey was playing that role. Was he working as an independent contractor exclusively for Savas or was he working as an employee working exclusively for Savas? What exactly was the employment relationship or the business relationship between the two? I don't want to minimize the existence of an LLC. I have several myself, but in this case, the existence of both Tony and John working through an LLC is really a tax machination. In its purest form, both John and Tony, independently, were working with Savas exclusively given an agency— May I finish my thought? Given an agency relationship in which they could bind Savas legally and nobody else. The issue of whether or not they were acting individually, as an employee, as a contractor, through a business-to-business relationship, is really more form over substance. Thank you. Any other questions? Not at this time, no. I have one more question. What's the purpose of arguing against the court's findings concerning the damages as to counts 3 and 10 where you haven't argued in your briefs that the court's findings as to liability were erroneous? Could you state that one more time? I apologize, Your Honor. What is the purpose of arguing against the court's finding concerning damages as to counts 3 and 10 where you haven't argued that the court's findings as to liability were erroneous? Because the argument for damages isn't exclusive. Well, you have to have liability first before you can argue damages. I understand, and we are arguing that there was liability. The concern was if we came here before, Your Honors, and argued just the issue of liability, then the claim would be, well, fine, even if you were successful in that endeavor, you hadn't put forth the issue of damages. So since liability in and of itself doesn't provide my client any redress, for that reason, obviously, damages becomes a supplementary issue that we didn't want waived. You're in essence saying that without damages, there's no prejudicial error? No, I think the prejudicial error would still exist. It just really comes with that. If there's no harm, there's no foul. At least that's what I was taught. If there's no damages, then even though the trial court erred insofar as a determination of liability, then you're still not prejudiced if they haven't established that there could be damages. But I think we've done that, Your Honor. I think we did it. I think that, excuse me. There's water. I understand. I'm about four weeks after that respiratory thing that happens to be going around. Okay. I think you've answered my question. All right. I have one more. With respect to the fourth Loyola factor, throughout your brief, you say the same facts that supported Savitz's existing claims, trade secret violations and civil conspiracy, supported the claim Savitz sought to add February 2022, which were all based on the fact that defendants collaborated with one another to form a competing business and steal Savitz's clientele. And that's a quote. So with respect to the fourth Loyola factor, you admit in your brief there were previous opportunities to amend. There were not previous opportunities after February of 2022, given the proximity of trial and given the failure of that motion to be permitted. The idea that we could have actually brought that motion a few months before while depositions were still being conducted, it's not enough that we did depositions of child. A few months makes a difference, doesn't it? I understand that. In terms of prejudice? Sure. But I don't believe there was any prejudice because the operative facts were the same that had always been pled. So that goes to the first Loyola factor. What defect was going to be cured? The fact that the- Evidentiary basis, right? For the fiduciary duty. Do you have a complete evidentiary basis to bring a complaint? I mean, we are in a facts pleading state versus notice pleading, so when it comes to something of that nature, it's kind of akin to fraud. There has to be some specificity, and that's, in fact, what we're looking for. And, you know, more apropos is the overarching issue for the motion to leave to conform to the proofs. I don't believe the trial court adequately considered whether amending the complaint to add the breach of fiduciary duty altered or changed the nature of proof to the claim. So there was nothing at trial that would have altered the defendant's proof to defend whether we were seeking the trade secrets, the civil conspiracy, or the desired fiduciary duty claim to be added. Mr. Robbie, you'll have an opportunity to make a vote. Thank you. Thank you very much. Don't forget your pen. Mr. Albrecht, you may proceed. Good morning. Can I ask a question? Please. Are you going to address the appeal or the cross-appeal first? I was going to address the appeal first and then come back to the cross-appeal after that. And good morning, and may it please the Court. My name is Doug Albrecht. Joel. And I'm going to jump right into the questions that the Court was asking my good friend about fiduciary duty. I think maybe the most direct place the Court can go look to find an answer as to what Judge Jaska thought about all the questions that the Court was just asking Mr. Robb is from the hearing on the February 8, 2023, hearing on the motion to reconsider the judgment. Jumping through all the questions the Court had about what were the factual allegations in the first complaint, which is all the way back in 2017, and what had developed over four years of discovery, five years of litigation, assuming that the plaintiffs made the best case that they could at trial about this issue of fiduciary duty, Judge Jaska, at the end of all of that, says, There is no testimony that Savas or Jodow, who is their principal, controlled either of the limited liability companies, Mr. John Curry's or Mr. Tony Curry's, nor is there any evidence that either of them could legally bind Savas to liability. That's the circuit court's holding after five years of litigation and trial and a post-judgment motion to reconsider. The only contract admitted into evidence at trial, by the way, was signed by Mr. Dow. And so my good friend's argument to the Court today that my client's, the two limited liability companies, or their principals, John or Tony Curry, could legally bind and subject Savas to liability is not on the record, and to the contrary, the exact opposite conclusion is in the record. Mr. Dow testified at trial that he oversaw operations, and his witnesses at trial testified that Savas legal, and Mr. Dow handled all the contracting. So there is no evidence, no factual evidence from the record, that my clients were in a principal agency fiduciary relationship with Savas in any way. So I hope that that addresses that question. And then to the Court's questions about damages, we had moved before trial for summary judgment on that point for the same reason. Pre-trial, we got no disclosures from the plaintiffs about what were your lost profits. We got no expert report from the plaintiffs about who caused those lost profits or why. And perhaps most critically, Mr. Dow, and as Judge Jaska found at trial, Mr. Dow testified that there were 30 to 40 other engineers that left at or about the time that Mr. John Curry and Mr. Tony Curry left. Well, some of them were recruited by the Currys, right? So eight came with the Currys. Okay. Thirty to 40 others went elsewhere. And so the suggestion to this Court, after five years of litigation, that Savas' damages or its downturn in business, which I don't know if that's true, I never got a report about that, were caused by my clients is absurd. Thirty to 40 other people left and went elsewhere, and Mr. Dow didn't sue any of them for anything. He just came after my clients, and I think that's because of the family feel that the Court may have got from the briefing. How many engineers were there total? So there were 10. So I know of 50. So there were the two limited liability companies that I represent. Principals were John and Tony Curry. There were eight people that we hired. That's 10. One of the eight people left after the Currys left, but let's call that 10. And then we have 30 to 40 other people that left after us. So that's about 40 to 50. And there are still, of course, engineers and principals at Savas to this day, but I do not know that number. I'm sorry, I didn't hear the number. So about 10 to 50. I think there are 10 to 20 still at Savas, but I don't know that number. It wasn't on the record. With regard to the motion to conform, to amend to conform to the proofs, there were new facts. Were there not developed during the trial? So I will subject, judge, yes, but not related to the question of whether there's a duty. And so the allegations about whether a duty is owed and what that may or may not have arisen from never changed. From the first complaint that was dismissed to the first amended complaint to the proposed second amended complaint to the pleading that was proposed after trial, facts relevant to whether there's a duty never changed. But it was undisputed that the Corys were collaborating with each other and with others to take business from Savas, correct? No. I would disagree, Your Honor. When you read Judge Jaska's findings on that. I'm talking about my review of the record. Sure. So I would disagree. So what Judge Jaska found was that, we would disagree with this, but we have to go with what the circuit court found. Judge Jaska found that Tony Cory was communicating, and John, were communicating with Project Pharma before they quit. That describes the way every American. They were developing Project Pharma while they were working for Savas. Forming it. Which is now a multi-million dollar company. Correct. And I would submit, Your Honor, that that's no different than Chrysler leading Ford, Mr. Lamborghini leading Ferrari. It is the American way. And Illinois law, by the way, is very clear that even if you're an employee with a common law fiduciary duty to your employer, you are free to form a competing company, lease office space, open a bank account, correct letterhead. You can do all these things to begin competing, even when you have a fiduciary duty. And here, we have two limited liability companies, which, by the way, aren't named in the appeal. They aren't even parties to this appeal. And so the very liability that my good friend is seeking to impose for his clients, they haven't named my correct clients to this appeal. So I don't know how the court could enter that relief. But let's assume that there would be a way that it could. My clients were limited liability companies in a business-business relationship at Mr. Dow's request. He asked for it that way. If he wanted some other duty, if he wanted some other obligations, he was free to do that. He could have insisted that they be employees. He could have insisted on a written contract with various duties. And he didn't do any of that. There's no evidence that he knew what they were planning, though, correct? No, that's correct. There's nothing in the record about that. They were collaborating while he was not watching. Yeah, I don't think that. I think Your Honor is correct about that. There's nothing in the record to contradict that. Did you want to address your jurisdictional argument? I do. So my overview to that would be claims filed a sprawling litigation against many, many defendants with many, many claims. And I think that we – and I think what happened is they haven't been careful in keeping track of all of that. And so when the trial verdict comes down, they file a post-trial motion to reconsider, which doesn't attack anything in the judgment. Just as Judge Jaska said in his ruling, it was simply another motion to file a proposed amended pleading. If you think about what the trial was about, it was about trade secrets. Post-trial motion to reconsider doesn't, as Your Honor noted, doesn't address that claim. It was about an alleged conspiracy to steal trade secrets. So you would agree that our construction should be liberal in looking at a motion to reconsider. And they did name in the pleading that it was a motion to reconsider the trial court's judgment, correct? I would agree, Your Honor. And the judge did make findings, again, repeated the findings that had been previously made that there was no fiduciary duties. He did. So if we were construing it, we would have to say we have jurisdiction, wouldn't we? So I would respectfully disagree, Your Honor. So the court undoubtedly repeated prior findings in its judgment that it had made about the Cap 2 fiduciary duty claim. But that claim wasn't tried. And when you look at the circuit court's reasoning about the post-trial motion, Judge Jaska said, this is another motion to file a different amended pleading. Right. But the trial court, again, despite what he said, he incorporated previous findings in his judgment. I agree. And so I think I can't disagree with Your Honor that if the court literally interprets the way that the appeal rule works and the time to toll, then I think you would get to that result. But I would respectfully submit that since that issue wasn't tried, it wasn't preserved. When the trial court previously made the other finding or the same finding way back when, was there any 304A language? No. So that order wasn't final in appeal, correct? Correct. So then it could be revisited at any time, couldn't it? Correct. And if it's reiterated in the judgment, wouldn't you say that it's part of the judgment? I would agree it's assumed in the judgment. And the part I disagree with the court about is whether it's part of the judgment. If a party makes an erroneous argument, if I make a closing argument to a jury about a count that's not planned, that's not a claim that all of a sudden comes back into life and isn't a live issue. Same thing for a bench trial. We have clients who repeated an argument that had previously been dismissed, and Judge Jaska commented at the end of his opinion, that is not a claim that was tried. As the parties should recall, that claim was dismissed way back when in 2019. So there certainly are comments in the judgment about that, but that is not, I would respectfully submit, that's not what the judgment was about. Okay, so moving past that issue. The other thing that I would just emphasize, Your Honors, that's separate and apart from the jurisdictional issue, is whether we're making the same arguments here about these amended pleadings. As the court may recall, the first time clients attempted to amend their pleading, which was after the close of discovery, we had a particular complaint that's in the court file, that isn't part of the record, that had eight claims, 255 new paragraphs, a bunch of different parties. That pleading is not on appeal here. And so when the other side argues that Judge Jaska abused his discretion in denying that mammoth pleading at the close of discovery, that's not the opinion, that's not the ruling they're challenging here. They're seeking something less. And the argument that we've made in our briefs, I hope we did it artfully, if not, my apologies, is that by arguing for something less, you are in effect making a new motion for leave to amend this court that was not presented to the circuit court, that the circuit court was not given a chance to rule upon. And accordingly, it's waived. The same thing happens with their post-trial motion to reconsider. At the close of evidence and before the court issued its judgment, they filed another motion for leave to file an amended pleading, although they called it a motion to reconsider. Well, they filed a motion for leave to file an amended pleading before the court issued its judgment. Was this a motion to conform pleadings to the proof? That was the motion to conform. So the plaintiffs filed on August 5th a post-trial motion to amend it. Do you consider that an attack on the judgment? The judgment hadn't been issued yet. No. Pardon? The judgment hadn't been issued yet. Oh. So the judgment came on September 22nd. When the close of evidence happened at the trial, plaintiffs filed a motion for leave to conform to the evidence and the parties prepared at the same time their written closing arguments for Judge Jaska, which were then later argued. The point I'm trying to make, separate and apart from the jurisdictional question, is the pleading that was proposed in their post-trial August 5th motion, which Judge Jaska denied, that's also not on appeal here. The version of that complaint, proposed complaint, which, by the way, there was no pleading in the record, as Your Honors noted, is also not the same. That added parties who are not on appeal here. The proposed to add claims that are not on appeal here. And it had parties like my client's limited liability companies that are not on appeal here. And so to argue that Judge Jaska made an error in denying that post-trial motion, the way it's presented to this Court is less than what they asked Judge Jaska and the circuit court to do. In a sense, they're trying to give themselves an appellate advantage to make them look more reasonable than they were on the trial court, and the Illinois rules don't permit them to do that. None of the pleadings that they offered to the circuit court are being presented to this Court. They're completely different, which makes them new arguments on appeal. And we would respectfully submit, even if the Court finds jurisdiction, the Court should find that those arguments have been waived because they weren't made below. If I could, let me just see if the Court had a comment on that. Do you want to just briefly go through the Loyola factors and how they favor your clients? Sure. So if we just take the motion that was filed at the close of discovery, that would be the February 3, 2022 motion. Mind you, the case had been pending for over four years at that point. We had fought to get disclosure of what the trade secrets were until 2021. And so looking at the Loyola factors, at the close of almost four years of discovery, to get a proposed pleading that added new parties and eight new claims and 255 new paragraphs of allegations, 25 of which were on information and belief, meaning they hadn't even been discovered, obviously would severely prejudice my clients and did. We had a trial date approaching of May, and here we were in January, I should say, in February, having a motion to file an amended pleading that was nothing short of a 180-degree turn from the way that the case had been litigated. So that certainly would have very prejudiced my clients and people who were not parties to the case. On the question of timing, the court had asked my good friend some questions about that. I mean, for example, were there new circumstances, were there new facts about fiduciary duty? While there was some evidence, yes, but as to whether there was a duty, no. The plaintiffs always had that information within their ken. Mr. Dow is the person who ran status. And so if at any point in time from when the case was originally filed in May of 2017 to when the first amended complaint was filed, 18, 19, 20, 21, that was always something that the plaintiffs could have added, and they didn't. It was always within their ken to do that. And if you look at this proposed pleading that happened at the end of discovery, the strategy there wasn't to file an elegant, refined pleading based on information that had been discovered. The idea was to file more sprawl. And let's drag this litigation out for a couple more years, let's make it more expensive. There had already been 21 depositions at that point. As my good friend said, hundreds of thousands of documents had already been exchanged. What on earth was the wait for? So in addition to prejudice, Your Honor, we do think it was signed timely. I think those arguments address the loyalty factor about were there prior opportunities to amend. Sure there were. I'm not going to rehash on that point the fiduciary duty argument and the evidence relevant to it. Let's just think about trade secrets. It was their computer system. It was always within their ability on day one, and for those of us that do this for a living, to hire a computer company before they even filed the case. Who accessed the system and when? And I know this Court has heard cases like this where there are experts, there's expert testimony in the record that John Doe accessed the system the day before he attended his resignation. The data shows that he emailed himself all of the key files or information from these particular systems. These plaintiffs did none of that. They never frantically reviewed their computer system. They're all engineers. They could have done it on their own. They never asked any of their employees to do that. What information do we have before we file this case? Or now that we've filed the case, what information do we have that Mr. John Corey or Mr. Tony Corey took anything? They made no effort to do that. And so I think, Your Honor, that addresses that third point of where there are prior opportunities. What about with respect to the shift to the evidence? The trial court's finding that it would not allow the Phase 2 build-out folder because it was not disclosed. Yeah, so obviously subject to the abuse of discretion standard, to the abuse of discretion standard, we fought forever, forever to have the plaintiffs identify what the trade secrets were because I have to prepare my clients, did you take it? I have to think about, is it secret? I have to think about whether it has any value. I have to think about whether it was used for anything. And I couldn't have my clients getting deposed on those topics and having surprise documents handed to them that we didn't think about. So it wasn't until May of 2021 that any disclosure was provided. After a motion to compel, which obviously trial courts hate to hear discovery fights, but enough was enough. So we had one. Judge Jaska made his very clear ruling in May of 2021. You need to identify by base number what your trade secrets are. Enough's enough. It's been four years. And so we got a disclosure seven days late, although that's not material. Here's the 146 documents. So off we went. And we have engineered clients. We did all of our research on the 146. They're old. They're not secret. I found them all online. They're not used for anything. We found copies of them from stuff that the plaintiffs had produced to us, that they had shared it with their parties, so they didn't own it. And so to argue that Phase 2 should have been admitted, it wasn't disclosed. Plain and simple, after four years, that document was not identified. That folder, by the way, it's a folder. It's 1,400 documents. Which our court found that it belonged to AVEX, right? And going by the title, AVEX's folder, the only agreement admitted in the record is the AVEX's contract. And the AVEX's contract, as Judge Jaska said, provides that those records don't belong to AVEX's, an issue that they haven't appealed. That's not even in their briefs. And so even if the court were to think that that potentially represented a reversible error by the circuit court, the plaintiffs haven't appealed the finding that those records didn't belong to Savitsyn, so they couldn't possibly have been their trade secrets in any event. I can answer. I see that I'm running close to out of my time on the 20 minutes. I thought I would touch for a moment on our cross-petition for fees for bad faith prosecution of the trade secret claim. I think we've laid out in pretty extensive detail in our brief why we think this was in bad faith. From the fact that it took forever to identify trade secrets to the point that when we actually got to trial, only 13 of those documents were offered. They weren't a compilation. They weren't secret. No damage analysis had been provided for them. And there was no evidence that they had been taken. So the trade secret claim was a farce from day one until the point of trial. And if that's not bad faith, it's hard to understand in the trade secret context what might be. And one of the — What's our standard of review? Yeah, so I think the court has to look for guidance at the Cogswell decision. And I think when the court does that, it's going to see that there's a couple of competing arguments, one by Justice DeLorte, who's in the minority on what he thinks in that case, and one by Justice Roachford. Justice DeLorte follows a standard that's based upon a comment that is in the Uniform Act, which Illinois adopted, although we didn't adopt the comments, which is a two-step analysis requiring speciously false and — I just forgot what I was going to say there. Hold on. Was there a second one? Bad faith? Yeah. So the DeLorte opinion required — Justice DeLorte opinion follows the California test. When you read his opinion, if you read his analysis, which is very thorough, he thinks that the California test is going to sweep within its ambit more bad conduct than what Justice Roachford suggests. And he goes on and explains why he thinks that there was bad faith in the Cogswell case. For example, the plaintiffs never proved that they owned the secrets. They were — Counsel, can I cut you off? Please. Because the point I understand is that there was a special concurrence that didn't agree with that concept, and the special concurrence was joined by the other justice, which means that the — what you're citing that DeLorte wrote isn't the law. It's a suggestion. I think that's — It might be persuasive in a very existential way, but it's the two special concurrences is what is to be read as the majority decision. I agree, Your Honor. And the test from there — and Justice Roachford writes very eloquently on that, too. And then she doesn't go the extra step of analyzing what happened, because she wants to send it back to the trial court for further consideration. So her test is either Rule 137, and that's — you know, Rule 137 is the basic file a false or frivolous pleading, or you bring a lawsuit without any basis in the law. I don't think I need to rehash or unwind how Rule 137 works well for — I understand that we may have — in the past, some of us have been trial judges, and we may have granted a fee in this case. But that isn't a standard of review. It's whether or not no reasonable person would disagree with the judgment. Correct. And, Your Honor — How do you respond to that very difficult impediment? And I could have said it better myself, Your Honor. And the circuit court had so much procedure and did so much work and wrote so many opinions, it's very difficult for me to suggest that the circuit court was wrong on this point. The thing that I think that the circuit court misunderstood that I would respectfully submit is what happened in that National Tractor case that we cited in our opinion, that trade secret claims are a unique species of claim, different from other kinds of statutory actions in Illinois. They can present burdens for the court because they're highly technical. If we're talking about a chemical formula or in the National Tractor case against Caterpillar, how are we repairing these massive tracks that go on these big tractors? And if you're a trial judge with juggling dozens of cases or hundreds of cases, it's a huge burden to get a case like this. And I think what the statute says is there's a corresponding duty on counsel to be really forthright with the court about what you're claiming the trade secret is, and that didn't happen here. And so to argue — to address Your Honor's question about the standard of review, which was an abuse of discretion, I would submit that the opening there is that Judge Jaska misperceived — the circuit court misperceived National Tractor's analysis about the unique nature of trade secret claims and excused conduct that probably would be excused on other statutory claims or other run-of-the-mill torts. But that's not what this was. This is a technical, expensive-to-litigate trade secret claim. And the fact that he thinks that the quarries may not have been honorable in how they formed and worked with Mr. Margold to form Project Pharma has absolutely nothing to do with whether the trade secret allegations, which, by the way, in fact, the fiduciary duty claim, right, when you read — if you read that count, there's — one of the reasons my clients purportedly owe duties is because they oversaw trade secrets of which there were none proven at trial. But the fact that he thinks — the fact that the circuit court believed that my clients had been not honorable in how they worked with Mr. Margold — not actionable, by the way, just not honorable — has nothing to do — has nothing to do with the trade secret claim. And that, Your Honor, I would say is the best argument I can give the Court about the abuse of discretion. Thank you. With respect to costs, you suggested in your brief that Your Honor were of any case law saying that a party can contract away statutory right to court costs. So I think that's — I think that's obviously the weakest argument in our brief. There was a very simple email exchange between counsel that will split trial costs. That's an agreement. Practice as we understood it is that's an agreement but preserves the statutory rights. If you add another sentence that says — Did you run across Galo v. Village and Ringwood in your research? No, Your Honor. Were the parties contracted away their right to costs? I'm not familiar with that case. You'll have an opportunity to answer. Thank you. Thank you very much. Mr. Robb, you may proceed. Thank you. There is a lot to unpack here. I want to start off by addressing some of the arguments made by counsel, particularly the concept that there is no fiduciary duty that's been put into the record. I would suggest an end-around hypothesis. If there was no duty, if Tony Corey didn't know that he had a duty, then why hide behind Justin Powers? Why work surreptitiously not to just open up your own company? That is the American way. And I'm a son of that way. And I take a great deal of pride in that way. But that is starkly different, Your Honor, than working internally to sabotage your current principle. And perhaps this isn't illegal but an emotional appeal, especially a principle that was so close and did so much to ensure you're coming into this world. Counsel's proposal that our appeal of the February 22 motion for leave somehow doesn't have jurisdiction because we aren't appealing the entirety of the denial of that motion. In this case, one of very few cases, I think less is better than more. He would have a very vital argument if we were trying to exceed the order or exceed what was proposed to be pled in that motion for leave. But in its essence, the court denied it. Our job is not to take everything possible, throw it against the wall, and see if it sticks. In this instance, it was the issue of the denial of the breach of judiciary duty claim, which was really primary. And that's what we're proceeding on, not everything under the sun. The issue of the Phase 2 billed folder, I'm not going to read directly from the record unless the justices suggest that I should. But in the supplemental disclosures to discovery, we listed 146 documents. Then we also listed the Phase 2 billed folder. And then there was an ancillary third item, which was specifically qualified as having to do with the tortious interference. Now, I think there are multiple ways to read this, if I can see that. But I genuinely and objectively think that it was a hyper-technical reading and not really understanding what the intent of the disclosure was. And as further proof of that, we can look in the record of Tim Mussman's deposition, where counsel for the defendant said, on the record, you've only disclosed 146 documents as your trade secret, at which point prior counsel for my client said, no, no. We've also disclosed the Phase 2 billed folder as a trade secret. This idea that Avexis owns its work product is true, but the Avexis Phase 2 billed folder was not merely the final product being delivered to Avexis. A lot of those documents, the vast majority of those documents, would never be provided to Avexis. Those were used as work product in creating the final deliverables, and that was predicated on past work. There would be potential SOPs in that folder, which may have not had anything to do with Avexis at all, but were there as a reference piece by which future SOPs or future proposals should be drafted. So simply because Avexis owns its work product is one thing. And without belaboring the point, the case law that we've cited, it makes no difference whether documents are publicly available. Counsel's position during this entire litigation has been to try to take each document on its own. Is this document a trade secret? Is this document a trade secret? And that's not how trade secrets work. And just because — Well, how do you define trade secret? A unified process, a convolution — That is protected in steps that are taken to protect it from disclosure, correct? And that was the case. I mean, there was a central drive with all of these in which John Tory had the authority to be able to determine which status employees had access to what areas. And, in fact, the employees only had access to areas of the drive that conformed with what they were working on. So with regards to the Phase 2 bill folder, I think there's a lot more there that should have been introduced. It should have been allowed as evidence of a trade secret. To touch briefly on this issue of the fee — Counsel, can I interrupt and ask? Of course. If the document or the file belongs to the client, how can you claim an ownership interest in the file regardless of whether it's public, non-public, confidential, secret, super-secret, or double-secret copay? Animal House was on cable this week. It comes down to this, Your Honor. Just because the final product for a VEXIS was owned by a VEXIS, if the Phase 2 bill folder is primarily consisting of work product, even if that work product might have templates or examples online, if that's part and parcel of the process that SAVVIS uses to develop its final deliverables for a client like a VEXIS, I don't think there's anything in the record that would suggest, sure, a VEXIS has ownership over its final work product, but everything that goes into that, the development of that, is all part of a process. And whether parts of those documents or some of that is available online, the case law that we've cited, I think, suggests that that's not really the overarching issue. It's whether or not it's proposing a uniform process. I did briefly want to touch upon this idea of the fees. One quick thing. No worries. You did say that it doesn't matter if it's available online? Yes, it doesn't. Is that the antithesis of secret? No, because in much of the case law we cited, a document can be available online. In fact, one of the cases that we cited suggested a wide array of them may be available online, but it's the compilation. It's the putting them together in a way that, in this case, would allow SAVVIS to service customers, to service clients, to develop these very technical protocols. From that standpoint, I think it still can suffice as a trade secret. I don't think there's really anything that counsel has put forth in any of his briefs that really belie that perspective. If I've got a moment, I would briefly touch on the issue of the fees with regards to the court reporter. There was an agreement, and I have a great deal of respect for my colleagues, but without being too colloquial, when I was a younger man, we would have called this dirty pool. The reality is I had no obligation to bind my client to paying for half the reporter fees. In fact, every court appearance had a court reporter supplied and paid for by the defendants. But trial came, and I understood the fee shifting issue, and we spoke and put forth the issue. Do you want to pay half? Do I have to pay half? No. But I will pay half, because that will be our agreement. We will split that. I would have in no way advised my client to say, you're not obligated to pay one dime, but we're going to promise to pay half, and if we lose, we have to pay all. We would have just rolled the dice and said, zero. I find it in bad faith, to put it lightly. That's all I have with regard to that. So it's not unlike the agreement, Charles? Yes. Okay. I'm trying not to repeat parts of my appeal and trying to address the issues of the cross appeal. The issue of the attorney's fees with regards to this issue, just because my client was unable to meet his burden is not enough to justify an award of fees. Fees are not awarded simply because a litigant doesn't have direct evidence of misappropriation. The courts have held that circumstantial evidence is acceptable. What we were putting forth as trade secrets, the documents that we introduced at trial, were always put forth as representing a sample of the larger contents of the SAVIS trade secrets and what was encompassed within the drive itself. There is no abuse of discretion on behalf of the trial court. This is not a violation of Rule 137. You may finish. Full stop. Go ahead. I'll put a period right at the end of the last word. Okay. Very good. Thank you. Thank you. Mr. Albritton, I believe you have the last say. If it may please the Court again, only the last part of that exchange is relevant to my rebuttal, so I'll confine my remarks to that and be very brief. The last point that counsel made was that the trial, that the 13 trade secret documents, which weren't secret, that they admitted at trial, weren't really the trade secrets. They were a bunch of other ones that hadn't been identified, that they were representative samples of other documents that in five years of litigation had not been disclosed, had not been identified to my clients, had not been subject to discovery, and had not been subject to any damage analysis. That is not the way exhibits, whether it's a trade secret case or any other kind of case, work at trial. And for counsel to close on the point that we admitted documents at trial that weren't even the trade secrets we claimed, I would respectfully submit puts the cap on our argument for why this was a bad faith trade secret claim. There is no Illinois law or any law anywhere else that says that's how you try a trade secret case. They rested their argument on there's other documents. That's not the way it's supposed to work. And so I would submit to the Court as my last argument that that is the cap for why this was a bad faith prosecution of a trade secret claim. They rested on information even after five years that had never been disclosed. Unless the Court has any more questions, I'll be able to rest my time. Thank you very much. Thank you. If there are other cases on the call, we will take a recess.